UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADINE MENENDEZ,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

25-cv-10794 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Nadine Menendez moves pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the return of certain pieces of her jewelry that the Government had seized from plaintiff's home in 2022 in connection with a criminal investigation into a complex, years-long scheme to bribe then-U.S. Senator Robert Menendez to take official acts to benefit plaintiff's co-conspirators and foreign governments. Plaintiff contends that this jewelry must be returned to her because it was unlawfully seized and because the Government's legal basis for retaining the jewelry dissipated at the conclusion of her criminal trial. For the reasons set forth below, the Court denies plaintiff's motion.

## I. Factual and Procedural Background

On June 15, 2022, United States Magistrate Judge for the District of New Jersey Michael A. Hammer issued a warrant authorizing a search of a New Jersey residence owned by plaintiff and occupied by her and her husband, then-U.S. Senator Robert Menendez (the "Residence Warrant"). (*See* Dkt. No. 3.) The Residence Warrant authorized the Government to search for and seize, *inter alia*, "[a]ll movable things of value" including "jewelry" that appeared to have been provided by plaintiff's co-conspirators and that were evidence, fruits, or instrumentalities of violations of federal laws criminalizing bribery, wire fraud, money laundering, and conspiracy. (*Id.* at 5.)

The Residence Warrant was supported by an affidavit of Federal Bureau of Investigation Special Agent Mary Jo Corkery.[1] (*See* Dkt. No. 3-2.) The Corkery Affidavit

[1] On the same date he issued the Residence Warrant, Judge Hammer also issued a warrant authorizing a search of a safe deposit box used by plaintiff at a New Jersey bank branch.

is more than ninety pages long and describes evidence that numerous things of value were provided to or for the benefit of plaintiff by co-conspirators—including payments towards the purchase price of a luxury automobile (*see id.* ¶¶ 35, 37–38, 42, 44–45), funds to pay plaintiff's home mortgage (*see id.* ¶¶ 37, 38.cc–38.ii), carpeting services (*see id.* ¶¶ 37, 47), and exercise equipment (*see id.* ¶ 56). The Corkery Affidavit also describes evidence that a co-conspirator purchased an engagement ring for plaintiff's benefit (*see id.* ¶¶ 19.c, 31.e, 37), details contacts between plaintiff and her co-conspirators with at least two jewelers (*see id.* ¶¶ 36.n n.25, 38.d & n.32, 38.v, 38.y.i, 38.z–38.bb), and states that probable cause existed to believe it likely that "[t]hings of value received during the course of the scheme, such as an engagement ring or other jewelry," were located in the residence (*id.* ¶ 61.b).

On June 16, 2022, FBI agents executed the Residence Warrant and seized, *inter alia,* nearly half a million dollars in cash as well as gold bars and numerous items of jewelry. (*See* Dkt. No. 3-3.) Subsequently, around December 28, 2022, the Government returned certain pieces of plaintiff's jewelry to her. (Dkt. No. 19 at 5, 27 n.12.)

On September 21, 2023, a grand jury indicted plaintiff, Senator Menendez, Wael Hana, Fred Daibes, and Jose Uribe for their roles in a complex, years-long scheme to bribe Senator Menendez to take official acts to benefit them and foreign governments. *See United States v. Menendez*, No. 23-cr-490 (S.D.N.Y.). Senator Menendez proceeded to trial in May of 2024. During summation—as part of the defense's attempt to provide a reason why hundreds of thousands of dollars in cash were found in plaintiff's residence—counsel to Senator Menendez argued that the large sums of cash found in the residence resulted from plaintiff having sold some of her jewelry. (*See* Crim. Dkt. No.[2] 577 ("Tr.") at 6600 ("She's selling jewelry. . . . That's why there's cash in her house.").) On July 16, 2024, a jury found Senator Menendez guilty of all counts with which he had been charged. (*See* Crim. Dkt. No. 511.)

Plaintiff proceeded to trial in March of 2025.[3] Following a five-week trial, a jury found her guilty of all counts with which she had been charged. (*See* Crim. Dkt. No. 835.) She is currently challenging her conviction on direct appeal before the U.S. Court

---

(*See* Dkt. No. 19-1.) This warrant was also supported by the affidavit of Special Agent Corkery. (*See* Dkt. No. 3-2.) The Government represents that no jewelry was seized from this safe deposit box. (*See* Dkt. No. 19 at 4, 5 n.3.) Accordingly, the Court focuses its attention on the Residence Warrant.

[2] References to "Crim. Dkt. No." are to documents filed in plaintiff's criminal case, *United States v. Menendez*, No. 23-cr-490 (S.D.N.Y.).

[3] Plaintiff was severed from the trial of Senator Menendez and her other co-defendants due to health reasons and tried separately. *See United States v. Menendez*, 793 F. Supp. 3d 511, 523 (S.D.N.Y. 2025).

of Appeals for the Second Circuit. *See United States v. Menendez*, No. 25-2322 (2d Cir.). If successful, plaintiff's appeal may result in a retrial on some or all of the counts with which she had been charged. While her appeal remains pending, plaintiff moves this Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for an order directing the Government to return the pieces of her jewelry that remain in the Government's possession (the "Jewelry"). Plaintiff describes this Jewelry as "personal jewelry, including inherited family jewelry." (Dkt. No. 1-1 at 1.)

## II. APPLICABLE LAW

Rule 41(g) permits "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to "move for the property's return." "If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g). "As a procedural matter, when a criminal case is closed and the defendant moves under Rule 41(g), that motion is treated as a civil complaint invoking the district court's equitable jurisdiction."[4] *Sash v. United States*, No. 09-cv-450, 2009 WL 3007379, at *3 (S.D.N.Y. Sep. 22, 2009).

Generally, "[t]o prevail on a Rule 41(g) motion, the moving party 'must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.'" *Id.* (quoting *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)); *see United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987) (evaluating whether a criminal defendant demonstrated that he was the rightful owner of certain property in deciding whether he was entitled to lawful possession of the property). *But see Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 395–96 (2d Cir. 2023) ("[O]nce the criminal proceeding is completed, there is a presumption that non-contraband property should be returned to its owner and, thus, the evidentiary burden under Rule 41(g) shifts to the government to demonstrate that it has a 'legitimate reason' for retaining the seized property."(citation omitted)).

The parties do not dispute that plaintiff is the rightful owner of the Jewelry and agree that the Jewelry is not contraband or currently subject to forfeiture. (*See* Dkt. No. 19 at 10 n.6). Thus, the question before the Court is whether the Jewelry was unlawfully seized and, if not, whether there is no longer a justification for the government to continue to retain the Jewelry as evidence.

---

[4] Although plaintiff's criminal appeal remains pending before the Second Circuit, her criminal case has been closed on the docket of this Court because plaintiff has already been sentenced, and her motion is treated as a civil complaint invoking this Court's equitable jurisdiction.

## III. Discussion

### A. The Jewelry Was Lawfully Seized.

Plaintiff first claims that her Jewelry must be returned because it was unlawfully seized. (*See* Dkt. No. 1-1 at 6.) According to plaintiff, the Corkery Affidavit does not sufficiently link any items of jewelry to plaintiff's criminal activity beyond the engagement ring purchased for plaintiff by one of her co-conspirators. For this reason, plaintiff asserts that there was no probable cause to support a warrant authorizing a seizure of any jewelry beyond the engagement ring and that the Government lacked a basis to believe that the Jewelry it found upon executing the Residence Warrant was provided by a co-conspirator and was evidence, a fruit, or an instrumentality of violations of federal law. The Court disagrees.

The Fourth Amendment to the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

"In evaluating probable cause in any given case, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (citation modified). Probable cause "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (citation modified).

When reviewing a magistrate judge's decision to issue a search warrant, a court "should start with the proposition that the magistrate's finding of probable cause is entitled to substantial deference." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "[T]he task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

A review of the Corkery Affidavit leaves this Court convinced that a substantial basis existed to support Magistrate Judge Hammer's probable cause determination. In an over ninety-page affidavit, Special Agent Corkery describes evidence of numerous things of value being provided to or for the benefit of plaintiff by her co-conspirators. The Corkery Affidavit identifies one of the numerous things of value as an engagement

ring (*see* Dkt. No. 3-2 ¶¶ 19.c, 31.e, 37, 61.b) and details scores of text messages and telephone calls by plaintiff and her co-conspirators with at least two jewelers (*see id.* ¶¶ 36.n n.25, 38.d & n.32, 38.v, 38.y.i, 38.z–38.bb). Taken together, these facts provided ample support for Magistrate Judge Hammer's finding of probable cause and decision to authorize the Government to search for and seize "[a]ll movable things of value" including jewelry that appeared to have been provided by one of plaintiff's co-conspirators and were evidence, fruits, or instrumentalities of violations of federal laws criminalizing bribery, wire fraud, money laundering, or conspiracy to commit these crimes. They also provide support for the Government's determination that the Jewelry fell within the scope of the Residence Warrant upon encountering the Jewelry.

Having determined that the seizure of plaintiff's Jewelry was lawful, the Court proceeds to analyze whether a lawful basis exists for the Government's present retention of that Jewelry.

### B. The Government's Current Retention of Plaintiff's Jewelry is Lawful.

Plaintiff asserts that she is entitled to the return of her Jewelry because the Government no longer maintains a legal basis to retain it following the conclusion of her criminal trial. Here, too, the Court disagrees.

In *Allen v. Grist Mill Capital LLC*, the Second Circuit determined that "during the pendency of an ongoing criminal investigation or proceeding, the defendant bears the burden of demonstrating that the government's retention of . . . seized property is unreasonable." 88 F.4th at 396. "However, once the criminal proceeding is completed, there is a presumption that non-contraband property should be returned to its owner and, thus, the evidentiary burden under Rule 41(g) shifts to the government to demonstrate that it has a 'legitimate reason' for retaining the seized property." *Id.* (citation modified).

It appears that the Second Circuit has yet to decide whether the pendency of a direct appeal precludes a finding that criminal proceedings have been "completed" in evaluating a Rule 41(g) motion. However, the Second Circuit has determined that a pending challenge to a criminal conviction—in *Allen*, that was a pending motion under 28 U.S.C. § 2255—"creates a legitimate need for the government to retain any seized materials that could be used as evidence at a potential retrial, even if the materials were not introduced as evidence in the first trial." *Id.* at 398.

As noted above, plaintiff is currently challenging her conviction on direct appeal before the Second Circuit. *See United States v. Menendez*, No. 25-2322 (2d Cir.). If successful, plaintiff's direct appeal may result in a retrial on some or all of the counts with which she had been charged. The potential evidentiary value of the Jewelry in the event of a retrial was elucidated in the arguments made by Senator Menendez,

plaintiff's co-defendant, at his criminal trial. (*See* Tr. at 6600 ("She's selling jewelry. . . . That's why there's cash in her house.").) The Government may decide it will seek to admit the Jewelry into evidence during a retrial in order to rebut a claim that sums of cash seized from plaintiff's residence were legitimate proceeds of plaintiff's sales of her jewelry, rather than the proceeds of a criminal scheme, as was argued by Senator Menendez at his trial on the same indictment. Accordingly, even assuming that plaintiff's criminal proceedings are "completed," the Government maintains a legitimate need to retain the Jewelry for use at a potential retrial, and plaintiff's theory that the Government's need for the Jewelry ended with the conclusion of her criminal trial fails.

## IV. CONCLUSION

The Court denies plaintiff's Rule 41(g) motion. Plaintiff's Jewelry was not unlawfully seized, and the Government maintains a legitimate need to retain the Jewelry for use at a potential retrial.

Dated: New York, New York
July 14, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.